Richard HARVEY, Appellant,

v.

ANHEUSER–BUSCH, INC., Appellee.

No. 93–3079.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1994.

Decided Oct. 17, 1994.

Doris Gregory Black, St. Louis, MO, argued, for appellant.

Howard Kent Mmunson, St. Louis, MO, argued, for appellee.

Before LOKEN, Circuit Judge, FRIEDMAN * and JOHN R. GIBSON, Senior Circuit Judges.

LOKEN, Circuit Judge.

Richard Harvey, an African–American, appeals the grant of summary judgment dismissing his claims that Anheuser–Busch, Inc., engaged in racial discrimination when it terminated Harvey as a supervisor of security guards for using poor judgment in a life-threatening situation. We agree with the district court[1] that Harvey did not present sufficient evidence to support his assertion that similarly situated white employees had previously been less severely disciplined. Therefore, we affirm.

## I.

The material facts leading up to Harvey's discharge are not disputed. In February 1991, Harvey was a sergeant-supervisor of security guards at Anheuser–Busch's Headquarters Complex and Brewing Operations facility in St. Louis. Harvey explains that, at approximately 1:30 a.m. on February 19, he

---

* The HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

1. The HONORABLE GEORGE F. GUNN, JR., United States District Judge for the Eastern District of Missouri.

was told to investigate a potential car theft in an Anheuser–Busch parking lot. Harvey's subordinate, Judson Eberhardt, drove Harvey to the parking lot. En route, they saw a man lying on the sidewalk near a park frequented by vagrants. Harvey told Eberhardt not to stop to assist or investigate, explaining that he (Harvey) would call the police later. Harvey forgot to call the police. At 6:30 that morning, a man was found dead in the same area. Though Harvey was still on duty when the body was found, and dispatched a security officer to the scene, he did not report that he and Eberhardt had seen a man in apparent distress earlier that winter night.

Six days later, Eberhardt submitted a written report of the incident, asserting that he was asked to drive Harvey to lunch at 1:30 a.m., that a man was "lying on the sidewalk," and that Harvey said he would call the police after his lunch. Harvey's superior, Ronald Roach, interviewed Harvey, who admitted that he saw a man lying on the sidewalk, instructed Eberhardt not to stop, and then forgot to call the police. Roach determined that Harvey had exercised poor judgment in not stopping to assist and investigate. He suspended Harvey for seven days.

During Harvey's suspension, August A. Busch, III, Chairman of the Board and CEO of Anheuser–Busch, Inc., received the following anonymous letter:

Dear Mr. Busch:

We are supplying you and those copied with this information because some of us consider ourselves professional security officers and are embarrassed by the lack of concern of our supervision.

Around 1:30 a.m. Feb. 19, 1991 an Anheuser Busch security patrol car officer who was accompanied by Sgt. Harvey observed a person lying on the sidewalk at 7th and Lynch. The Sergeant advised the officer that he would take care of it after he ate and for the security officer to continue with other duties.

The security officer in building 202 was told of the person lying on the sidewalk by persons entering the building. The officer notified Sgt. Harvey several times by phone.

At 6:30 a.m. it was discovered the person had died during the night.

All security officers are trained in first aid and CPR, it is possible we may have been able to have saved the persons life. Why should we be trained if we are not allowed to use our training?

Is this A.B. policy?

Is this security dept. policy?

Who is responsible for this persons death?

How can we work for or respect this Sergeant?

How does the dead persons family feel?

How can the police dept. allow this Sergeant to have a license?

Why isn't security under one hat?

Those Professionally Concerned

Copy:

St. Louis Post dispatch

Riverfront Times

Mr. George Peach

Watchman Division St. Louis, Police Dept.

Brewers & Maltsters

Mr. Stewart Meyer

Mr. Richard Schwartz

Mr. Dennis Voisey

Busch asked his staff to investigate. When the staff's report supported the letter's allegations, Chairman Busch ordered that Harvey be discharged. Following his termination, Harvey commenced this action asserting discrimination claims under Title VII, ADEA, and Missouri law.

Harvey's complaint alleged that Anheuser–Busch had intentionally discriminated on the basis of race by terminating Harvey "for the 'stated reason' of using poor judgment as a supervisor," while "imposing less severe discipline on white employees who used poor judgment as supervisors or as employees." After a number of claims were dismissed, Anheuser–Busch moved for summary judgment on the core issue of race discrimination and submitted lengthy supporting affidavits by Plant Security Manager Roach and Chairman Busch. Busch stated in his affidavit:

6. Based on the information provided to me, I was of the opinion that a security

sergeant-supervisor who would not stop, but who would direct his driver to drive by a person lying on a sidewalk late on a February night, and who did not notify the police concerning the incident was guilty of using very poor judgment. I was of the opinion that such poor judgment could jeopardize the lives of employees and guests of the Company; that such poor judgment might subject the Company to some legal liability, and the Company was at some risk from a public relations point of view.

7. I determined, based upon my belief of the truth of the above facts as related to me, that [Harvey] should be discharged. I gave instructions that [Harvey] be discharged.

8. At no time did I ever hear that [Harvey] denied seeing a person lying on the sidewalk or directing his driver not to stop to render assistance. Nor did [Harvey] deny that he failed to notify the police.

Harvey's response to the motion for summary judgment did not contest the above-stated facts. Rather, he argued that Busch's stated reason for discharge "raises a genuine issue of fact that only a jury should be permitted to determine" because white security guards and employees "were not disciplined as severely for what could be termed as instances of exercising poor judgment." The district court concluded that the alleged instances of disparate treatment were not sufficiently similar to Harvey's discharge to create an inference of discriminatory intent. It therefore granted summary judgment because Anheuser–Busch set forth legitimate nondiscriminatory reasons for the discharge and Harvey "has failed to come forward with any evidence upon which a reasonable trier of fact could find that defendant's justifications for dismissing him were pretextual, or that a discriminatory or retaliatory reason more likely than not motivated defendant."

Harvey appeals. We review the district court's decision *de novo*, applying the same standard as the district court and examining the record in the light most favorable to Harvey. *See, e.g., Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992).

## II.

Summary judgment is appropriate against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When Harvey pleaded a prima facie case of employment discrimination, and Anheuser–Busch responded with evidence of a legitimate nondiscriminatory reason for the challenged discharge, Harvey retained

> the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination. [He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Because Harvey presented no direct evidence of intentional discrimination, the critical summary judgment inquiry is whether he came forward with sufficient evidence that Anheuser–Busch's nondiscriminatory reason is pretextual, that is, "unworthy of credence," to permit the trier of fact to find that a discriminatory or retaliatory reason motivated the discharge. This is the critical inquiry because:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination. . . .

*St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (emphasis in original); *see also Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1109–10 (8th Cir.), *cert. den.*, —

U.S. ——, 115 S.Ct. 355, —— L.Ed.2d —— (1994).

 In opposing summary judgment, Harvey's only evidence of pretext was a recitation of instances in which Anheuser–Busch allegedly disciplined white employees less severely for exercising bad judgment.[2] Instances of disparate treatment can support a claim of pretext, but Harvey has the burden of proving that he and the disparately treated whites were "'similarly situated in all relevant respects.'" *Jones v. Frank,* 973 F.2d 673, 676 (8th Cir.1992), quoting *Lanear v. Safeway Grocery,* 843 F.2d 298, 301 (8th Cir.1988). Absent such a showing, Harvey presented no credible evidence of pretext, and summary judgment in favor of Anheuser–Busch was appropriate. *Compare Richmond v. Board of Regents,* 957 F.2d 595, 598 (8th Cir.1992); *Meyers v. Ford Motor Co.,* 659 F.2d 91, 94 (8th Cir.1981).

Harvey argues that he presented evidence of pretext because Eberhardt, who is white, was not terminated, while Harvey was suspended seven days and then discharged. We disagree. Eberhardt was Harvey's subordinate. Harvey instructed Eberhardt not to stop to assist the man lying on the sidewalk and later forgot to call the police. In these circumstances, disparity in discipline was clearly warranted. Moreover, there is no evidence that Chairman Busch's follow-up investigation, which led to Harvey's discharge, ever focused on Eberhardt. Thus, Eberhardt and Harvey were not similarly situated for purposes of proving pretext.

 During discovery in the district court, Harvey prepared a list of ten "Similar Incidents and Reprimands of Fellow Supervisors." He testified at his deposition, and argues on appeal, that these incidents support his claim of disparate treatment of whites and blacks in the Anheuser–Busch Plant Security Department. He also testified that supervisors in other departments received suspensions or other discipline short

of discharge for various types of misconduct. We agree with the district court that none of these instances was sufficiently similar to give rise to an inference of discriminatory intent in the discharge of Harvey, a security supervisor who ignored a life-threatening situation. Employees are similarly situated when they "'are involved in or accused of the same offense and are disciplined in different ways.'" *Boner v. Board of Comm'rs,* 674 F.2d 693, 697 (8th Cir.1982) (stating that "the offense of suspected embezzlement is not comparable to [plaintiff's] offense of poor job performance"). Harvey's examples of alleged disparate treatment do not meet this rigorous test.

Moreover, Harvey has failed to identify the Anheuser–Busch supervisors who determined to impose the allegedly less severe discipline on white employees. This is significant because Harvey's own immediate superior, Roach, suspended but did not discharge Harvey. The decision to discharge was made by Chairman Busch after an independent investigation by Busch's own staff. When different decision-makers are involved, two decisions are rarely "similarly situated in all relevant respects." *See Jones,* 973 F.2d at 676 & n. 3.

 At his deposition, Harvey attempted to meet the different decision-maker issue by alleging in general terms that Chairman Busch had been personally involved in the minor disciplining of two white security guards. In one instance, a security manager "was reduced to a sergeant" after "a couple incidents that happened that Mr. Busch wasn't satisfied." In the other, Busch transferred and suspended a guard for watching television in a guard shanty. We cannot agree that these vague allegations are sufficient evidence of pretext. These were minor infractions compared to the incident that led to Harvey's discharge. To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of "'comparable seriousness.'" *Lanear,* 843

---

2. On appeal, Harvey also argues that there are other disputed issues of fact—whether the man he and Eberhardt saw at 1:30 a.m. was the same man found dead later that morning, and whether Chairman Busch knew Harvey's race when Busch made the decision to discharge. We

agree with the district court that these are not *material* issues of fact. *See Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (relevant inquiry is whether employer *believed* employee guilty of conduct justifying discharge).

F.2d at 301, quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). *Compare Kendrick v. Commission of Zoological Subdistrict*, 565 F.2d 524, 527 (8th Cir.1977) (two instances of fighting not sufficiently similar for disciplinary purposes).

After carefully reviewing the evidence submitted by Harvey in opposition to Anheuser–Busch's motion for summary judgment, we agree with the district court that the instances in which white employees were allegedly disciplined less severely are not sufficiently similar to Harvey's discharge to raise a triable issue of pretext. Harvey's immediate superior suspended him for using poor judgment in failing to assist a person in life-threatening distress near the Anheuser–Busch Headquarters Complex. The incident then came to the attention of Chairman Busch, who investigated further and concluded that Harvey's misfeasance went to the core of a security supervisor's responsibilities, corroded morale in the Plant Security Department, affected the safety of the Company's employees and visitors, and jeopardized its standing in the community. Absent evidence raising a reasonable inference that these nondiscriminatory reasons were pretextual, Harvey's employment discrimination claims were properly dismissed because he failed to present evidence from which a jury could find that a discriminatory or retaliatory reason motivated his discharge. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir.1994); *LeBlanc v. Great Amer. Ins. Co.*, 6 F.3d 836 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.... Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod,* 939 F.2d at 1470 (internal quotation omitted); *see also Clay v. Hyatt Regency Hotel,* 724 F.2d 721, 725 (8th Cir.1984) ("While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination.").

We have carefully considered Harvey's other contentions and conclude they are without merit. Accordingly, the judgment of the district court is affirmed.