883 F.Supp. 435 (1995)
Donna J. FERRY, Plaintiff,
v.
ROOSEVELT BANK, Defendant.
No. 4:94CV00139 GFG.
United States District Court, E.D. Missouri, Eastern Division.
April 17, 1995.
*436 Althea P. Johns, St. Louis, MO, for plaintiff.
Gregory F. Hoffmann, Millar and Schaefer, St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
GUNN, District Judge.
This matter is before the Court on defendant's motion for summary judgment. Document 8. For the reasons set forth below, the motion is granted in part and denied in part.
Plaintiff Donna J. Ferry filed a five-count complaint against defendant Roosevelt Bank, her former employer, alleging that she was fired from her position as a customer service representative (CSR) at defendant's Normandy branch because of her age and disability. Ferry asserted claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., (Count I), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., (Count II), 42 U.S.C. § 1981a, (Count III), and the Missouri Human Rights Act (MHRA), Mo.Rev.Stat. § 213.010 et seq., (Count IV).[1]
It is undisputed that Ferry is over 40 years of age, that she worked at defendant's Normandy branch from 1983 to 1993, that she was promoted from Savings Representative to CSR in January 1991, that in October 1991 she suffered a cerebral hemorrhage and was placed on medical leave of absence, and that she returned to work on a full-time basis without restriction in January 1992. Ferry alleged that upon her return from medical leave, she was not as mentally sharp as she had been and that she had difficulty with the computer system defendant installed in July 1992. Ferry also alleged that she became tired after working for about five or six hours. Ferry asserted that defendant's agents were aware of her cerebral hemorrhage but never initiated contact with her to discuss any problems.
Ferry asserted that she had always received satisfactory ratings on her performance reviews, until she was placed on probation for 90 days in October 1992 for cashing an invalid payroll check. Defendant extended *437 her probation for 60 days on January 22, 1993, allegedly because her performance had not improved. On March 24, 1993, defendant gave Ferry the option of taking an unpaid medical leave of absence or being terminated. Ferry refused the offer and was terminated effective March 24, 1993.
In support of her age discrimination claim, Ferry alleged that she was the oldest employee at the Normandy branch, that she made about the same number of mistakes as younger employees who were not terminated and that younger employees committed infractions which should have but did not lead to their termination. In support of her disability discrimination claim, Ferry asserted that defendant could have reasonably accommodated her by permitting her to work shorter hours or on a part-time basis. Ferry alleged that such an accommodation would have allowed her to spend more time learning the new computer system. These same allegations underlie Ferry's MHRA claim.
In its motion for summary judgment, defendant argues that Ferry was terminated for her poor performance and not because of her age or disability; that Ferry never requested any accommodation and therefore defendant had no duty to accommodate her; and that Ferry's disability discrimination claim fails because she refused defendant's offer of a reasonable accommodation.
Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court views the evidence and the inferences which may be drawn therefrom in the light most favorable to the nonmoving party. Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
In response to a properly supported motion, the nonmoving party may not rest on the allegations of the complaint, but by affidavit or other evidence must set forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257, 106 S.Ct. at 2514.
The Eighth Circuit has cautioned that "summary judgment should seldom be used in employment-discrimination cases." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994). Only in the rare case when there is no dispute of fact and there exists only one conclusion should summary judgment be granted. Id. The Court reasoned that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Id.

1. The Age Discrimination Claims
The ADEA forbids an employer from discharging an employee within the protected age group (over 40) because of the employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). The MHRA contains a similar prohibition. See Mo.Rev.Stat. §§ 213.010, 213.055.1(1)(a). In the absence of direct evidence of age discrimination, the burden shifting analysis of McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to claims brought under the ADEA and the MHRA. See Rinehart v. City of Independence, 35 F.3d 1263, 1265 n. 1 (8th Cir.1994) (same analysis applies to age discrimination claims under the MHRA), petition for cert. filed, 63 U.S.L.W. 3692 (U.S.1995); Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir.1994). Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a prima facie case. If the plaintiff makes a prima facie showing, then the burden shifts to the defendant to articulate a legitimate, *438 nondiscriminatory reason for the termination. If the defendant meets this burden, then the plaintiff must prove that the defendant's asserted reason is merely a pretext for discrimination. Bashara, 26 F.3d at 823. In order to survive summary judgment at the third stage of the McDonnell Douglas analysis, the plaintiff must produce some evidence which "would allow a jury to find that the defendant's proffered reason is pretext and the real reason for its action was intentional discrimination." Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir.1995).
To establish a prima facie case of age discrimination, Ferry must show "that she belongs to a protected class; that she was qualified for the job from which she was discharged; that she was discharged; and that after her discharge, the employer sought people with her qualifications to fill the job." Richmond v. Board of Regents of Univ. of Minnesota, 957 F.2d 595, 598 (8th Cir.1992) (ADEA claim); see Swyers v. Thermal Science, Inc., 887 S.W.2d 655-56 (Mo.Ct.App. 1994). In Richmond, the district court granted summary judgment for defendants, determining that plaintiff had failed to establish her prima facie case "because her poor work performance showed that she was not qualified for her job." Id. The Eighth Circuit agreed, reasoning that the plaintiff's poor performance undermined both her ability to make out a prima facie case and to show that the reason defendants offered for her termination was a pretext for discrimination. Id.; see also Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 290-91 (8th Cir. 1982) (plaintiff failed to show that he was qualified for job in the sense that his performance met employer's legitimate expectations; plaintiff's poor performance was nondiscriminatory reason for termination), cert. denied, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). Defendant maintains that the record supports a similar conclusion here.
The record contains ample evidence of Ferry's poor job performance. First, though Ferry received a satisfactory performance review on September 4, 1992, the reviewer indicated that he believed Ferry's performance had declined since she had returned to work following her cerebral hemorrhage and that her poor performance may have been due to her condition. The review indicated that Ferry was inattentive to details at times and that the volume of work she produced had decreased. Affidavit of Mary Ann Nielsen (Nielsen aff.), Director of Human Resources for Roosevelt Bank, exh. C at 1-3.
Second, on October 2, 1992, Ferry cashed a forged payroll check in the amount of $855. Ferry depo. exh. D. Ferry failed to record a means of identification on the back of the check or obtain approval from a branch manager. Id. As a result of this transaction, her supervisor placed her on 90-day disciplinary probation effective October 24, 1992. Id. This action was taken in accordance with bank policy regarding transactions resulting in losses to the bank caused by an employee's failure to follow bank procedure. Nielsen aff. ¶ 4.
Third, on January 22, 1993, the bank extended Ferry's disciplinary probation for an additional 60 days because she continued to perform poorly. Ferry depo. exh. A. According to the report, Ferry committed excessive errors preparing new account documents; she failed to follow proper procedures in basic transactions such as check cashing and deposits; she opened two new accounts using the customers' assumed names; and achieved only 22% of her personal annuity sales goal for 1992, the lowest of the 20 licensed CSRs in the region. Id. Ferry was informed by her supervisor that the failure to improve her performance in the areas identified could result in her dismissal. Id.
Fourth, during the extended probationary period, Ferry's performance did not reach a satisfactory level in any of the three major functions of her job: basic teller transactions and balancing, new account document preparation, and annuity sales production. Ferry depo. exh. B. Ferry committed 64 errors in new account work during February 1993. Id.; Affidavit of Susan J. Schuepfer (Schuepfer aff.), Vice-President and Regional Savings Manager of Region II of Roosevelt Bank, exh. G. From September 1992 through March 1993, Ferry committed 141 errors in new account documents. Schuepfer *439 aff. ¶ 5. Regarding annuity sales production, at the time she was discharged in March, Ferry had achieved only 58% of her year-to-date goal. Id. at ¶ 4. Although this constituted an improvement over her 22% performance for the previous year, it was still deemed unsatisfactory by defendant. Ferry depo. exh. B.
In response, Ferry cites portions of her deposition testimony, which she contends create a factual dispute regarding defendant's claims of poor performance. Ferry also maintains that her testimony shows that defendant's claim of poor performance as the reason for her discharge was a pretext for age discrimination because other, younger employees of the Normandy branch committed serious infractions but were not discharged. Document 11, at 5-6.
The first deposition excerpt concerns the invalid payroll check Ferry cashed. Ferry was asked: "Is there anything that is described in that portion of the interview record that is inaccurate?" Document 11, exh. A. Ferry responded by stating "to be perfectly honest, I don't  I don't remember the check or the person...." Id. Counsel then asked: "So, are you saying that this is an accurate description of the event?" Id. Ferry's response was: "As  as far as I can remember. I don't remember the check, the amount of course I guess will be burned in my memory because it was mentioned to me several times over and over again." Id. In an affidavit filed in opposition to the motion for summary judgment, Ferry further stated: "I have no recollection of making the mistakes that I was presented with. I do not believe that I made those mistakes." Ferry aff. at ¶ 5. Neither Ferry's testimony nor the statement in her affidavit creates an issue of fact as to whether the incident occurred, however. The statements simply establish that Ferry cannot remember the specifics. Moreover, as defendant points out, Ferry admitted at her deposition that her performance was deficient in the areas of new account document preparation and annuity sales. Ferry depo. 33, 36. The Court concludes that, as in Richmond, Ferry has failed to establish the existence of a genuine issue of material fact on an essential element of her prima facie case  that she was qualified for the job from which she was discharged. See Richmond, 957 F.2d at 598.
As for Ferry's claim of pretext, Ferry testified that Houston Topps and Carol Eggleston, both of whom are younger than Ferry, committed serious infractions but were not discharged by the bank. Ferry depo. at 16-17. Ferry stated that Eggleston made the same types of mistakes on new accounts as Ferry did. Id. at 17. Ferry allowed, however, that Eggleston "probably ... didn't have as many." Id. Bank records show that Eggleston did not commit as many errors in preparing new account documents as Ferry did. From September 1992, through March 1993, Ferry made 141 errors. Eggleston made 43. Schuepfer aff. at ¶ 5. This evidence indicates that Ferry was fired for poor performance rather than as a pretext for age discrimination.
Ferry further testified that Houston Topps "acted like the office was a playground." Ferry depo. at 19. Ferry stated that Topps was not very attentive to the teller line, that he often kept people waiting and that he "more or less just played around, much to the anger of a lot of us there." Id. Topps's alleged misconduct is not sufficiently similar to Ferry's performance problems as to give rise to an inference of pretext or discriminatory treatment, however. See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972-73 (8th Cir.1994) (holding that plaintiff must show that disparately treated employees were similarly situated in all relevant respects). The other evidence in the record regarding Topps's performance, moreover, indicates that he committed only 3 errors on new account documents during the period in which Ferry committed 141. Schuepfer aff. at ¶ 5.
Finally, Ferry asserts that Eggleston violated bank policy concerning bad checks but was not fired. Ferry prefaced her deposition testimony by stating, "I don't know this right down to the ninth [sic] degree." Ferry depo. at 19. Ferry then testified that "there was a formal memo sent out about bouncing checks or checks that wouldn't clear your account, and after three times, I believe, you were supposed to have been terminated if I remember *440 correctly, the way the memo read. Carol wasn't." Ferry depo. at 19. The record reveals, however, that bank policy provides that an employee is subject to dismissal if the employee writes more than five insufficient funds checks in any 12-month period. If an employee writes five insufficient funds checks during a 12-month period, the policy requires that the employee be placed on disciplinary probation for 90 days. Nielsen aff. at ¶ 5 and exh. I. Carol Eggleston wrote five insufficient funds checks on her account between May 14, 1992, and December 23, 1992, and in accordance with bank policy, she was placed on disciplinary probation for 90 days. Nielsen aff. at ¶ 6, and exh. J. Eggleston was also informed that she would be dismissed if she wrote another insufficient funds check within the 12-month period. Nielsen aff. exh. J. Thus, the record refutes Ferry's recollection. In any event, Eggleston's alleged misconduct is not sufficiently comparable to Ferry's performance problems to give rise to an inference of pretext. See Harvey, 38 F.3d at 972-73.
Accordingly, viewing the evidence in the light most favorable to Ferry, the Court concludes that she has failed to show that a genuine issue of material fact exists on whether the reason given for her terminationpoor job performance  was a pretext for age discrimination. Ferry has failed to come forward with evidence indicating that defendant retained younger employees with comparable performance problems. See, e.g., Jones v. Frank, 973 F.2d 673, 676-77 (8th Cir.1992) (evidence of noncomparability precluded showing of pretext in sex discrimination case); Boner v. Board of Comm'rs, 674 F.2d 693, 697 (8th Cir.1982) (same; race discrimination case). Therefore, summary judgment on Ferry's age discrimination is granted.

2. The ADA Claim
The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). The ADA defines the term "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id., § 12111(8). The term "discriminate" is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id., § 12112(b)(5)(A).
To establish a prima facie case under the ADA, Ferry must show that: (1) she was "disabled" as defined by the ADA; (2) she was qualified, with or without accommodation, to do the job; and (3) her termination amounted to unlawful discrimination based on her disability. White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir.1995); Tyndall v. National Educ. Centers, 31 F.3d 209, 212 (4th Cir.1994). The McDonnell Douglas burden shifting methodology applies to disability discrimination claims. See Mason v. Frank, 32 F.3d 315, 318 (8th Cir.1994).
For purposes of this motion, defendant assumes that Ferry has a disability within the meaning of the ADA. Defendant argues that summary judgment is warranted because Ferry never requested any accommodation and turned down an offer of accommodationunpaid medical leave  immediately prior to her termination. Ferry admitted in her deposition and in the affidavit accompanying her charge to the EEOC that she did not request an accommodation of any type. Ferry depo. at 48-50, 71-72; Ferry depo. exh. H at 3. But Ferry argues that the ADA does not require an employee to request an accommodation to trigger the employer's duty to accommodate a known disability.
Section 12112(b)(5)(A), as quoted above, does not expressly condition the employer's duty to provide an accommodation on a request from the employee. The legislative history of the ADA, however, indicates that while it is generally an employee's duty to request an accommodation, an employer may, as was done here, initiate a discussion concerning *441 the need for an accommodation when an employee with a known disability is having problems with job performance. House Report No. 101-485(II) provides:
[T]he legislation clearly states that employers are obligated to make reasonable accommodations only to the "known" physical or mental limitations of an otherwise qualified individual with a disability. Thus, the duty to accommodate is generally triggered by a request from the applicant for employment or an employee. Of course, if a person with a known disability is having difficulty performing his or her job, it would be permissible for the employer to discuss the possibility of a reasonable accommodation with the employee. In the absence of a request, it would be inappropriate to provide an accommodation.
H.R.Rep. No. 101-485(II), 101st Cong., 2d Sess., 65 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 303, 347; see also EEOC's Interpretive Guidance on Title I of the ADA (EEOC's Interpretive Guidance), 29 C.F.R. Pt. 1630, App. § 1630.9.[2]
The Court need not resolve whether the ADA requires the employee to request an accommodation from his or her employer before the employer's duty to accommodate arises because, in this case, defendant complied with the law by initiating a discussion with Ferry concerning possible accommodations prior to her termination. The record demonstrates that after Ferry's performance failed to improve during the five-month probationary period, defendant offered Ferry unpaid medical leave in lieu of termination. Ferry depo. exh. B. By taking this step, defendant initiated the "interactive process" envisioned by the ADA which "involves both the employer and the qualified individual with a disability" in determining the appropriate accommodation. See EEOC's Interpretive Guidance, 29 C.F.R. Pt. 1630, App., § 1630.9. Defendant's offer to accommodate Ferry with unpaid medical leave shifted the burden to Ferry to request the particular accommodation she believed would enable her to perform the essential functions of her job adequately.
Ferry failed to discharge this burden. Ferry simply declined defendant's offer, id., exh. E, and was discharged.[3] Ferry did not request that defendant permit her to work shorter hours or part-time so she could commit more time to learning the new computer system. Ferry depo. at 48-50. Yet, Ferry now alleges that defendant should have accommodated her "either permitting her to work shorter hours or on a part-time basis, and defendant could have permitted her to commit any extra time to learn the new system, but refused to do same." Document 1, 6-7. Ferry maintains that defendant's failure to provide that precise accommodation amounted to a violation of the ADA. The Court rejects this argument. In Schmidt v. Safeway, Inc. 864 F.Supp. 991, 997 (D.Or.1994), the Court observed that an "employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." This is precisely what Ferry is attempting to do here.
The Court concludes that after defendant offered Ferry a period of unpaid medical leave to resolve her problems, it was incumbent upon Ferry to request an alternative accommodation if she believed that such an accommodation would enable her to perform *442 the essential functions of her job. Having failed to do so when given the opportunity, Ferry may not now premise her ADA claim on defendant's failure to ascertain the precise accommodation she secretly desired. Cf. Lue v. Moore, 43 F.3d 1203, 1206 (8th Cir.1994) (blind prisoner's failure to request to participate in existing vocational program or request that defendants make accommodations for him precluded claim under Rehabilitation Act); see Vande Zande v. State of Wisconsin Dep't of Admin., 44 F.3d 538, 542 (7th Cir. 1995) (ADA is to be interpreted consistently with Rehabilitation Act). Accordingly, defendant's motion for summary judgment on Ferry's ADA claim is granted.
In Count III of her complaint, Ferry purports to assert a claim for disability discrimination under 42 U.S.C. § 1981a. That statute does not provide an independent ground for relief, however; it simply sets forth the remedies available and defenses to claims for damages in ADA cases. See 42 U.S.C. § 1981a(a)(2), (3). Thus, Count III does not state a claim for relief.

3. The MHRA Handicap Discrimination Claim
Finally, the Court denies defendant's motion as to Ferry's handicap discrimination claim under the MHRA without prejudice. Defendant has provided the Court with no Missouri authority to support its motion for summary judgment on this aspect of Ferry's complaint, and the Court's analysis of the ADA's legislative history is inapplicable to the MHRA. Defendant is free to file a properly supported motion for summary judgment on this portion of Ferry's complaint if it so desires.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted in part and denied in part.
NOTES
[1] Ferry also asserted a claim for intentional infliction of emotional distress (Count V), which this Court previously dismissed. Document 15.
[2] Title 42 U.S.C. § 1981a(a)(3), which governs damages in cases of intentional discrimination in employment under the ADA, also implies that the employee must request an accommodation before the employer may be held liable for damages. It provides in part:

In cases where a discriminatory practice involves the provision of a reasonable accommodation ... damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.
[3] Ferry argues that the offer of unpaid medical leave was not a reasonable accommodation. An offer of unpaid medical leave may be a reasonable accommodation under the ADA if it is likely that, following treatment, the employee could resume her duties. See Schmidt v. Safeway, Inc., 864 F.Supp. 991, 996-97 (D.Or.1994).