Charles COZZA, Plaintiff,

v.

NORTHROP GRUMMAN
CORPORATION,
Defendant.

No. CV 97–6789–CAS (BQRx).

United States District Court,
C.D. California,
Western Division.

March 3, 1999.

Charles Cozza, Anaheim, CA, pro se.

Terry E. Sanchez, Bernardo Silva, Munger Tolles & Olson, Charles F. Barker, James F. Lam, Sheppard Mullin Richter & Hampton, Los Angeles, CA, for Defendant.

## ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SNYDER, District Judge.

The Court has considered defendant's Motion for Summary Judgment. After reviewing the materials submitted by the parties, the arguments of counsel, and the case file, the Court hereby grants defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Charles Cozza ("Cozza") filed the present lawsuit against defendant Northrop Grumman Corporation ("Northrop") in Los Angeles County Superior Court in May 1997, alleging claims for age discrimination and breach of an implied employment contract. Defendant timely removed the case to this Court in September 1997. Presently before the Court is defendant's motion for summary judgment.

The primary facts surrounding this lawsuit are not in dispute. Following twenty years of military service, plaintiff began working for Northrop as a Procurement Administrator in January 1988. Declaration of Charles Cozza, ¶ 3. In approximately December 1998, plaintiff was promoted to the position of Major Subcontractor Administrator ("MSA"). Deposition of Charles Cozza, at 70:5–12 ("Cozza Depo."). In this position, plaintiff was responsible for ensuring that Northrop procurement policies were followed in administrating certain major subcontracts at Northrop. Deposition of Robert Sokkeli, at 28:21–29:5. ("Sokkeli Depo."). The M.S.A. § is the primary contact for procurement functions between Northrop and the supplier on a subcontract. Cozza Depo., 74:3–9.

In approximately 1991, plaintiff was assigned to be the M.S.A. § for a series of subcontracts performed by Harris Corporation ("the Harris subcontracts"). *Id.* at 83:1–25. The Harris subcontracts involved the development by Harris Corporation of certain computer software programs and related hardware for Northrop. As the M.S.A. § on these subcontracts, plaintiff had an oversight role in the administration of the subcontracts. *Id.* at 73:9–12. One of plaintiff's job responsibilities included the processing of "requests for equitable adjustment" ("REAs") submitted to Northrop by Harris. An REA is a request submitted by a subcontractor for additional money due to work performed by the subcontractor that it believes is outside the scope of its work under the subcontract. *Id.* at 168:5–7. Northrop's ILS division, an engineering department, is initially responsible for performing technical evaluations on an REA. The amount of the REA to be paid is then negotiated between the subcontractor and the procurement department. As an MSA, plaintiff had the authorization to approve REAs up to $100,000. *Id.* at 70:24–25. However, pursuant to Northrop policies, any REA submitted over $100,000 was subject to formal cost analysis procedures. *Id.* at 202:18–19.

In late 1994, Jo Wilson ("Wilson") was assigned to work with plaintiff on the Harris subcontracts. At that time Wilson was training as a "buyer" for Northrop. Dec-

laration of Jo Wilson, ¶ 3 ("Wilson Decl."). Under plaintiff's supervision, Wilson assisted in the negotiations for a set of twenty-eight REAs submitted by Harris in November 1994. Wilson began to believe that plaintiff had engaged in improper conduct in connection with the project, and in early 1995, she reported her concerns to plaintiff's supervisors. *See id.*, ¶ 7. Wilson contended that plaintiff had instructed her to conduct negotiations on the Harris REAs without adequately preparing her. *Id.* She also alleged that plaintiff wanted to negotiate the REAs submitted by Harris separately, in order to keep the amount of each REA under $100,000 and avoid further review of the REAs. *Id.* In addition, Wilson claimed that plaintiff had instructed her to backdate a technical evaluation prepared for the negotiations on the Harris REAs. *Id.*

Northrop commenced an investigation into plaintiff's work on the subcontracts, as well as that of other employees involved with the Harris subcontracts. Initially, Northrop conducted an audit of purchase orders connected with the subcontract. Deposition of Michael Parrott at 52:23–25 ("Parrott Depo."). Northrop then performed a legal investigation into the alleged misconduct. During the course of this investigation, which lasted approximately four months, Northrop investigators interviewed a number of witnesses, including plaintiff. On September 13, 1995, the investigators submitted their report to Northrop management. The Employee Relations department reviewed the results of this report in order to advise management with respect to disciplinary issues.[1]

On October 20, 1995, Robert Sokkeli ("Sokkeli"), Vice President of Materiel and Subcontract Management, terminated plaintiff on the grounds that plaintiff had committed gross negligence in his handling of the Harris subcontracts and had violated company policies by falsifying documents. *See* Sokkeli Depo. at 342:9–14;

Defendant's Exhibit 28. In his letter recommending plaintiff's discharge, Sokkeli stated that plaintiff had "failed to carry out his subcontract administration responsibilities in that he failed to follow Northrop Grumman processes and procedures for the negotiation and settlement of Harris requests for equitable adjustments" and had violated company policies by "falsifying, altering or [ ]omitting pertinent information on company records." Defendant's Exhibit 28.

Pursuant to Northrop procedures, plaintiff filed a grievance following his discharge. *See* Declaration of Roberta Currier, ¶ 6 ("Currier Decl."). Plaintiff prepared a written statement for the grievance committee of three Northrop senior managers. At the grievance hearing, plaintiff testified and answered questions from the committee. Other witnesses appeared at this hearing, and two Northrop employees testified at plaintiff's request. *Id.*, ¶ 7. In January 1996, the grievance committee issued its decision affirming Sokkeli's termination decision. *See* Declaration of Patrick J. Wilson, ¶ 6.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the ele-

---

1. The legal report was found to be privileged by Magistrate Judge Robbins, and defendant has not placed the substance of the legal report at issue in this case.

ments that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 477 U.S. 317. *See also Abromson v. American Pac. Corp.*, 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. DISCUSSION

### A. *Age Discrimination Claim*

Plaintiff's first claim for relief alleges that he was terminated on the basis of his age, in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12900 *et seq.*, and

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, both of which prohibit employers from discriminating against employees based on age.[2]

A three step burden shifting analysis is used in employment discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir.1990). In order to establish a *prima facie* case of age discrimination, the plaintiff must initially establish each of the following elements: (1) plaintiff was a member of the protected category; (2) plaintiff performed his or her job in a satisfactory manner; (3) plaintiff was discharged; (4) plaintiff was replaced by a substantially younger employee with equal or inferior qualifications. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Once the plaintiff has established this *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *Id.* If the employer does so, the inference of discrimination is overcome, and the plaintiff must then provide evidence to demonstrate that the legitimate reason proffered by the defendant is merely a pretext for discrimination. *Id.*

"The requisite degree of proof necessary to establish a prima facie case for ... ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994). In the present case, it is undisputed that plaintiff was a member of the protected category at the time of his discharge (he was fifty-one years old), and that plaintiff was terminated. It appears that plaintiff's job duties were assumed by three separate employees: John Thornton, Peggy Gilhooly, and James Kelly. At the time plaintiff was

2. California courts rely on federal discrimination cases to interpret claims brought pursuant to the FEHA, therefore the same elements are at issue in plaintiff's FEHA and ADEA claims. *See Bradley v. Harcourt, Brace, and Co.*, 104 F.3d 267, 271 (9th Cir.1996).

terminated these three employees were all younger than plaintiff; Thornton was approximately thirty-seven, Gilhooly was approximately forty-one, and Kelly was approximately thirty-four. *See* Exhibit 2 to Declaration of Ellen Serbin, at 7–8. At the time of his discharge plaintiff had a number of years of experience in procurement, and had received consistently positive performance reviews at Northrop.

Defendant argues that plaintiff has failed to state a *prima facie* case of discrimination because plaintiff was not performing his job satisfactorily at the time of his termination. The Court assumes that plaintiff has established a *prima facie* case, and that the evaluation of plaintiff's alleged negligence and violations of company policies is more appropriately considered in determining whether or not defendant had a legitimate, nondiscriminatory reason for terminating plaintiff. *See MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1119–21 (10th Cir.1991) (finding it inappropriate to consider alleged reasons for discharge in determining existence of a *prima facie* case). Because the amount of evidence required ᐧto demonstrate a *prima facie* case is "very little," the Court finds that plaintiff has stated a *prima facie* case of age discrimination. *See Wallis*, 26 F.3d at 890.

Nonetheless, once plaintiff has stated a *prima facie* case, the burden shifts to Northrop to demonstrate that the "adverse action was taken for other than impermissibly discriminatory reasons." *Id.* at 889. Northrop contends that plaintiff was terminated for violating Northrop's policies and procedures.

▪ The relevant facts surrounding plaintiff's termination are undisputed. Sometime in early 1995, Wilson reported her concerns regarding plaintiff's alleged misconduct to plaintiff's supervisor, James Kelly ("Kelly"). Wilson Decl., ¶ 7. When Kelly failed to take any action, Wilson reported to Michael Parrott, Kelly's supervisor. *Id.;* Parrott Depo., 52:11–16. Northrop ᐧsubsequently performed an investigation into plaintiff's conduct in connection with the Harris subcontracts, as well as other employees involved with the Harris subcontracts. Northrop concluded that plaintiff had violated Northrop procurement procedures.

First, Northrop found that plaintiff had intentionally divided the twenty-eight REAs into separate requests in order to keep them below $100,000 each, in order to circumvent further review of the requests. The amount of the twenty-eight REAs together totaled approximately $1.4 million. Cozza Depo., 184:2–3. Plaintiff admits that he processed the requests separately. *See id.* at 188:6–8. He contends that another procurement manager, Robert Archibald, instructed him to process them in that manner. *Id.* at 188:2–8. Plaintiff also admits that he questioned whether the requests should be handled separately according to Northrop procedures. *Id.* at 188:22–24. However, plaintiff did not raise these concerns with Northrop senior management. *Id.* at 373:10–13. A Northrop operating procedure requires that "products that are negotiated as a single package must be combined on a single purchase order." Sokkeli Decl., ¶ 4. Northrop concluded that plaintiff's actions were taken deliberately to avoid further review, in violation of the express Northrop procedure requiring the requests to be negotiated together.

Northrop also found that plaintiff violated company policies by directing Wilson to backdate a technical evaluation in connection with the Harris subcontracts. After the Harris REAs were approved, plaintiff realized that the required paperwork was incomplete, and a necessary technical evaluation was missing. At that time, plaintiff directed Wilson to prepare the technical evaluation, and told her to date the document prior to the commencement of the negotiations. In his deposition, plaintiff testified: "I did not direct any specific date be placed on the document. What I told her to do was to date the document commensurate with the action that was

taking place." *Id.* at 213:1–4. Plaintiff admits that although the document was in fact created months after the November negotiations, it was dated November 10, 1994. *Id.* at 213:15–16.

The undisputed facts, therefore, demonstrate that plaintiff engaged in violations of company policy. Northrop has demonstrated that it had a legitimate, nondiscriminatory basis for plaintiff's termination. When the employer has shown that there is a legitimate, nondiscriminatory basis for termination, the presumption of discrimination drops away, and the plaintiff must present evidence showing that the asserted reason for termination is only pretextual. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir.1996). "In order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Wallis*, 26 F.3d at 889. To counter defendant's proposed nondiscriminatory reasons, the plaintiff must produce "specific, substantial evidence of pretext." *Id.* at 890.

In the present case, plaintiff's evidence of age discrimination consists of: (1) Northrop's treatment of other employees in connection with the Harris subcontract investigation; and (2) his contention that Northrop has a policy of terminating workers over forty.

The facts concerning the treatment of other employees in connection with Northrop's investigation into the Harris subcontracts do not demonstrate that Northrop's real basis for terminating plaintiff was because of his age. A total of five employees were subject to discipline as a result of the investigation into work on the Harris subcontracts. Two of these employees (plaintiff and Kelly) were subject to discipline by Sokkeli, the other three employees were members of the ILS division, and therefore were subject to discipline by a different senior manager, Don Hatten.

The other employee disciplined by Sokkeli was plaintiff's immediate supervisor, Kelly, who was thirty-four years old at the time. Kelly was suspended for five days. In the ILS division, David Carleton, the ILS manager, who was fifty years old, was also terminated. Paul Slaven, an ILS manager who was forty-seven years old, and Charles Frankenberger, an ILS support manager who was fifty-eight years old, were both suspended. *See* Currier Decl., ¶ 5.

In order to show that Northrop's motive was pretextual on the basis of comparative discipline, plaintiff must establish that the other employees were similarly situated. *See e.g., Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 972 (8th Cir.1994). Plaintiff has not shown that the other four employees disciplined in connection with the Harris subcontracts were disciplined for the same type of conduct, nor that they were similarly situated. The employees in the ILS department had different responsibilities on the project and were disciplined by a different supervisor. In addition, two of the ILS employees who were suspended but not terminated were in the protected age category at that time (Slaven and Frankenberger). Kelly, the other employee disciplined by Sokkeli, was not similarly situated to plaintiff in connection with the Harris subcontracts. Kelly was disciplined for failing to supervise effectively in responding to Wilson's concerns. *See* Sokkeli Decl., ¶ 6. In addition, while plaintiff contends that other employees were disciplined less severely for engaging in the same conduct, the record shows that plaintiff was terminated for backdating documents as well as for violating procurement policy in negotiating the REAs. There is no evidence to demonstrate that any other employee was accused of both types of misconduct. The discipline given to other employees by Northrop in connection with the Harris subcontracts does not support the inference that defendant's actual motive in terminating plaintiff was due to plaintiff's age.

Plaintiff also states that he believes Northrop has a policy of terminating employ-

ees over forty, based on statements made to him by a co-worker, AnnMarie Socash ("Socash"). *See* Cozza Depo., 398:13–16. In support of this claim, plaintiff claims that Socash gave him a list of Northrop employees over forty who have been terminated. *Id.* However, there is no evidentiary basis for the Court to consider this information. Socash is not a member of Northrop's Human Resources department, and plaintiff provides no evidence to demonstrate that the information she provided to him is reliable. *Id.* at 400:3–21. Plaintiff has adduced no admissible evidence which would allow a reasonable fact finder to determine that Northrop's purported basis for plaintiff's termination was false, or that the true reason for his discharge was discriminatory.

The Court finds that while plaintiff may have stated a *prima facie* case of age discrimination, the undisputed facts establish that Northrop had a legitimate, non-discriminatory basis for his termination. Plaintiff has failed to come forward with evidence which would create a genuine issue of material fact that defendant's alleged reason for termination was pretextual. "When evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate." *Wallis*, 26 F.3d at 890. The Court hereby grants defendant's motion for summary judgment as to plaintiff's first claim for relief.

## B. *Breach of Contract Claim*

■ Plaintiff's second claim for relief alleges that his termination by Northrop violated an implied contract of employment. California law establishes a presumption that employment relationships may be terminated at will by either party. *See* Cal. Labor Code § 2922. However, this presumption "may be rebutted if the employee presents facts showing the existence of an implied agreement that employment will not be terminated except for good cause...." *Kohler v. Ericsson, Inc.*, 847 F.2d 499, 501 (9th Cir.1988); *see also Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988).

The existence of an implied-in-fact contract turns on the intent of the parties. *See Tonry v. Security Experts, Inc.*, 20 F.3d 967, 971 (9th Cir.1994). The court should look to the totality of the circumstances surrounding a plaintiff's employment in order to determine the existence of an implied contract. *See Pugh v. See's Candies*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981).

Plaintiff alleges that the implied contract between himself and Northrop arose over the course of his employment with Northrop. However, even assuming for the purposes of this motion that disputed issues of material fact exist with respect to the implied-in-fact contract, summary judgment for defendant is appropriate if the evidence shows that plaintiff was terminated for good cause. *See Kohler*, 847 F.2d at 501.

■ Under California law, good cause for termination is satisfied by "[a] reasoned conclusion ... supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct, and a chance for the employee to respond." *Cotran v. Rollins Hudig Hall*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 910, 948 P.2d 412 (1998). "[E]mployers who fire employees for misconduct are not required to prove that the alleged misconduct actually occurred. Rather, the employer must show that it reasonably believed that the alleged misconduct took place and otherwise acted fairly." *Silva v. Lucky Stores, Inc.*, 65 Cal.App.4th 256, 76 Cal.Rptr.2d 382, 385 (1998).

■ The evidence in the record suggests that Northrop's investigation meets this standard. The undisputed facts, as discussed in detail above, establish that Northrop terminated plaintiff on the grounds that he had violated company policies. Plaintiff admits to having violated those policies. *See* Cozza Depo., 213:1–4. Focusing on the defendant's actions in this case, there is no dispute that Northrop

reasonably believed that plaintiff had committed misconduct in connection with the Harris subcontract. Northrop based this belief on Wilson's statements and a preliminary audit. Plaintiff has not put forth any evidence to demonstrate that Northrop's subsequent investigation was conducted in bad faith.

In addition, while plaintiff claims that he was not given an adequate opportunity to present his claims, the evidence demonstrates that Northrop acted fairly in conducting the investigation. In the course of the its investigation into the Harris subcontracts, Northrop interviewed plaintiff as well as a number of other employees. *See* Currier Decl., ¶ 4. Northrop's Employee Relations department then reviewed the report. *Id.* Plaintiff was then given the opportunity to present his grievance before a neutral committee of three senior managers. *Id.,* ¶¶ 6, 7.

Therefore, even if plaintiff were able to demonstrate the existence of an implied-in-fact contract in the present case, there are no triable issues of material fact with respect to defendant's good cause for plaintiff's termination. For the foregoing reasons, the Court finds that summary judgment in favor of defendant is appropriate as to plaintiff's second claim for relief.

IT IS SO ORDERED.