936 F.Supp. 665 (1996)
Daymon BROWN, Plaintiff,
v.
McDONNELL DOUGLAS CORPORATION, Defendant.
No. 4:95CV00997 GFG.
United States District Court, E.D. Missouri, Eastern Division.
July 31, 1996.
*666 *667 *668 David M. Heimos, Clayton, MO, for plaintiff.
Thomas A. Mickes, Peper and Martin, St. Louis, MO, for defendant.

MEMORANDUM
GUNN, District Judge.
Plaintiff Daymon E. Brown commenced this action against defendant McDonnell Douglas Corporation, his former employer, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., (Count I) and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213.010, et seq., (Count II), alleging that defendant terminated him because of his age. Plaintiff was over 53 at the time of his discharge. Document 1. Defendant's motion for summary judgment is now pending before the Court. For the reasons set forth below, the motion is GRANTED.

I. BACKGROUND
Plaintiff was born on March 2, 1939. He began working for defendant on August 6, 1962. Over the years, plaintiff worked in a variety of positions for defendant, including some supervisory positions. From 1986 to 1992, plaintiff worked as a Senior Production Engineer. In early March 1992, plaintiff received a raise. On March 20, 1992, plaintiff was notified that he would be laid off effective April 1, 1992, due to a reduction in force ("RIF").
Prior to the effective date of the layoff, however, plaintiff sought and obtained a transfer to the position of Senior Support Programs Control Analyst in Department 023V of the Business Operations Division. Ronald Ruethain, Group Manager, interviewed plaintiff, hired him for the position, and supervised his work. Document 14, Exh. C at ¶¶ 3-4. Plaintiff's new job required him to update or make changes in company publications. Brown depo. at 45. Plaintiff had no prior experience in this area and informed Ruethain of this in the interview. Id. at 29-30. Plaintiff testified that Ruethain said it would take six months to one year for plaintiff to learn all the systems. Id. at 30.[1] During the interview, Ruethain expressed concern over plaintiff's high salary, indicating that the employees in Department 023V did not make that kind of money. Id. at 35. Plaintiff explained that there was nothing he could do about that because he had earned his salary at a different kind of work. Ruethain replied that he would "work with it." Id. According to plaintiff, Ruethain stated that due to his high salary, the *669 chances were "slim to none" that plaintiff would get a raise or promotion in his new position. Id. at 43. Plaintiff accepted the job anyway. Id.
In mid-1992, Ruethain reviewed plaintiff's job performance and gave plaintiff a negative evaluation. Of the twelve factors considered on the evaluation form, Ruethain rated plaintiff as fully competent on one, as requiring improvement in eight, and as needing corrective action on three.[2] Plaintiff's rate of learning and expertise did not meet Ruethain's expectations for an employee with plaintiff's level of experience. Document 14, Exh. C at ¶ 7. Ruethain believed that plaintiff lacked motivation, did not have a desire to learn the tasks required of his new position, and was apathetic toward pleasing his customers. Id.[3]
Plaintiff testified that during the evaluation, Ruethain indicated that he was displeased with plaintiff's performance and stated that he never should have hired plaintiff. Brown depo. at 54. According to plaintiff, Ruethain stated: "I could have hired a young college graduate and paid them half of what I'm paying you to do this kind of work." Id.[4] Plaintiff testified that he responded by stating: "Well my salary has nothing to do with this type of work. I earned that salary over 30 years at [a] different kind of work at a different company." Id.
On November 6, 1992, plaintiff was notified that he would be laid off effective December 1, 1992. Plaintiff was selected for the layoff from a group of 144 employees in the Business Operations Division at grade 56 and 57. Ken Gumper, the overall Manager of the Business Operations Division, informed Ruethain and the other Group Managers of the need for a RIF in August 1992. Document 14, Exh. D at ¶ 7. Gumper instructed each of the managers to compile a relative ranking list of their employees. Id. The assessment process required each manager to score each employee based on: (1) technical capability  job/technical knowledge commensurate with diversity of assignments and experience; (2) skills application  interpersonal and analytical skills, ability to perform varied assignments of increasing levels of complexity and responsibility; (3) personal commitment  productivity level, demonstrated commitment, and willingness to put forth extra effort; and (4) team building  ability to work with others for the good of the team. Id. at ¶ 8; Exh. C at ¶ 12. Plaintiff received the lowest score of all the grade 56/57 employees in Ruethain's group. Id., Exh. C at ¶ 13.
In preliminarily ranking all employees in Business Operations, Gumper considered the relative assessment scores determined by the managers, corporate guidelines for RIF, the most recently documented performance appraisals, and an employee's five-year merit increase history. A maximum point value was given to each factor and point values for each employee were assessed based on historical performance data, management's direct observations, and input from program personnel and customers. Id., Exh. D at ¶ 10. Gumper met with the managers again after making his preliminary ranking to review the master ranking and to obtain agreement of all the managers as to the employees to be laid off. Id. at ¶ 12. Plaintiff received the lowest ranking of the 144 grade 56/57 employees in Departments 022, 023, and 024 of the Business Operations Division. For that reason, plaintiff was selected for layoff. Id. at ¶ 13.
Six other employees were also laid off or retired in lieu of being laid off during this RIF: Loretta Clem, Gerald Dorris, Bruce Frank Grundwald, Karl Marlinghaus, Nona L. Stephens, and Norman Wenneker. Their respective ages at the time plaintiff was notified of the layoff were: 56, 54, 54, 55, 55, and 64. Document 21, Exh. 1 at ¶ 5.
*670 In support of its motion for summary judgment, defendant contends that plaintiff cannot make a prima facie case of age discrimination because: (1) his job performance did not meet his employer's expectations at the time of the layoff; and (2) he has failed to come forward with any evidence that age was a factor in the termination. Alternatively, defendant argues that plaintiff's claim fails because he was terminated for a legitimate, nondiscriminatory reason  he received the lowest relative assessment score of 144 comparable employees in the Business Operations Division. Document 14.
In response, plaintiff disputes the negative evaluation he received in mid-1992, and claims that the evaluation was performed to justify any subsequent layoff. Plaintiff further argues that Ruethain's remark  that he could have hired a younger employee at half of plaintiff's salary  is indicative of age bias. As additional evidence of age bias, plaintiff cites: the fact that, after the layoff, some of his duties were distributed to two younger employees, Patricia Farthing, age 28, and David Johnson, age 44; and all seven employees who either retired in lieu of termination or were terminated in the RIF were over age 53. Finally, plaintiff contends that the relative assessment scores were a pretext for age discrimination because higher scores were predominantly given to younger employees while lower scores were predominantly given to older employees. Document 21.

II. DISCUSSION
Summary judgment shall be entered if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). In ruling on a motion for summary judgment, this Court views the evidence and all reasonable inferences which may drawn therefrom in the light most favorable to the nonmoving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir.1995). In response to a properly supported motion, the nonmoving party must set forth specific facts, by affidavit or other evidence, which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356.
In the absence of direct evidence of age discrimination, the burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to claims brought under both the ADEA and the MHRA. Rinehart v. City of Independence, 35 F.3d 1263, 1265 n. 1 (8th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995); Ferry v. Roosevelt Bank, 883 F.Supp. 435, 437 (E.D.Mo.1995). Plaintiff has the initial burden of establishing a prima facie case of age discrimination. Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir.1995). If plaintiff makes this showing, the burden shifts to defendant to produce evidence that plaintiff was terminated for a legitimate, nondiscriminatory reason. If the defendant discharges this burden, then plaintiff must prove that defendant's asserted reason is merely a pretext for discrimination. Id.
The Eighth Circuit has cautioned that "summary judgment should seldom be granted in employment discrimination cases." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994). If, however, "the plaintiff fails to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate." Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir.1995). Similarly, summary judgment is warranted when a plaintiff fails to create a genuine issue of fact as to whether an employer's explanation for a layoff is a pretext for discrimination. Hutson, 63 F.3d at 777.
Defendant contends plaintiff cannot show that he was performing his job adequately or that age was a factor in the termination decision  two essential elements of *671 the prima facie case.[5] The Court will not address these contentions but, rather, will assume for purposes of this motion that plaintiff has made a prima facie showing. See Nitschke, 68 F.3d at 251-52. Defendant has articulated a legitimate, nondiscriminatory reason for the termination  the RIF coupled with plaintiff's low relative assessment score. See id. at 252. The Court must therefore determine whether plaintiff has produced sufficient evidence to create a genuine issue of fact on the question of pretext and on the ultimate issue of intentional discrimination. Id.
In making this determination, the Court will consider all the evidence plaintiff has submitted. See Hutson, 63 F.3d at 777 (plaintiff not necessarily required to submit specific additional evidence beyond prima facie case to show pretext). A plaintiff in an age discrimination case can avoid summary judgment at the pretext stage of the McDonnell Douglas framework "only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996). In some cases, evidence establishing a prima facie case combined with disproof of the defendant's proffered explanation may be sufficient on the ultimate issue of age discrimination. Hutson, 63 F.3d at 777. However, proof that the defendant's articulated reason is false or incorrect does not, standing alone, entitle the plaintiff to prevail. Instead, the plaintiff must show that "the explanation is a pretext for discrimination." Id.
Plaintiff first asserts that "it is [his] belief that Mr. Ruethain's poor mid-year 1992 evaluation was done to justify any subsequent layoff of plaintiff." Document 21 at 9. In support of this assertion, plaintiff cites his positive 30-year service record with defendant and positive evaluations from 1991 and 1992. Document 21, Exhs. 8-9. Plaintiff concedes that he did have a negative evaluation in 1990, id., Exh. 10, but explains that this evaluation occurred just after he started in a new position.
The record does not support plaintiff's assertion that Ruethain's evaluation in 1992 was done to justify a future layoff. First, the only evidence in the record relating to Ruethain's knowledge of the impending RIF at the time of the evaluation are the affidavits submitted by Ruethain and Gumper. Ruethain's affidavit states: "At the time of Mr. Brown's 1992 mid-year review, I was not aware of a pending reduction in force." Document 14, Exh. C at ¶ 10. Gumper's affidavit likewise states that he was unaware that a RIF would be required in Business Operations in July 1992 (when the evaluation took place). Id., Exh. D at ¶ 5. Plaintiff's "belief" is nothing more than speculation and does not create a genuine issue of fact sufficient to withstand a motion for summary judgment. See Wilson v. IBM, 62 F.3d 237, 241 (8th Cir.1995).
Second, plaintiff's prior positive evaluations are not probative on the issue of pretext or on the validity of Ruethain's evaluation of plaintiff's performance in mid-1992 or at the time of the layoff. See Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994) (employee's performance at time of discharge is determinative). Moreover, Ruethain did not perform the prior evaluations. Simply because Ruethain's evaluation of plaintiff's performance differed from plaintiff's prior supervisors does not suggest that Ruethain's view was a pretext for discrimination. See, e.g., Turner v. Schering-Plough Corp., 901 F.2d 335, 343-44 (3d Cir.1990) (prior positive, performance reviews by different *672 supervisor did not support finding that recent, negative reviews by new supervisor were pretextual). Additionally, at the time plaintiff received the positive evaluations, he was performing a different job with different functions. His prior positive evaluations, therefore, do not call into question the validity of the negative evaluation plaintiff received in his new position. See Healy v. New York Life Ins. Co., 860 F.2d 1209, 1215 (3d Cir.1988) (good performance evaluation in lower level position does not imply success in more competitive environment), cert. denied, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).
The Court notes, moreover, that in two recent cases involving this same scenario, involving an employee terminated during a RIF based on a low relative assessment ranking, the Eighth Circuit rejected the employees' claims that their records of positive performance reviews provided circumstantial evidence of age discrimination. See Nitschke, 68 F.3d at 252; Hutson, 63 F.3d at 779. The Court explained: "even capable employees are released when an employer is downsizing and therefore evidence of competence is not particularly probative." Hutson, 63 F.3d at 779. In contrast, when an employee is terminated for incompetence, a "demonstration of competence may serve as evidence of pretext." Id. In Nitschke and Hutson, however, as here, the explanation for the discharge was not incompetence, but a RIF and an assessment that the plaintiff was less competent than the other comparable employees in his department. Nitschke, 68 F.3d at 252; Hutson, 63 F.3d at 779-80. Therefore, plaintiff's "evidence regarding his competence does not discredit McDonnell Douglas's explanation for his termination." Nitschke, 68 F.3d at 252.
Finally, plaintiff concedes that his performance evaluations, though generally positive, were not uniformly positive. For example, in a 1989 performance appraisal, plaintiff's performance was rated marginal. Document 21, Exh. 10. Plaintiff's explanation for this negative appraisal  that he received it after just a short time in a new position  tends to support the validity of Ruethain's 1992 evaluation, which also occurred shortly after plaintiff transferred into a new position. Accordingly, viewed in its entirety, plaintiff's employment history does not suggest that the mid-1992 evaluation was a pretext for discrimination.
Plaintiff also disputes specific complaints Ruethain raised regarding plaintiff's performance. Ruethain stated that plaintiff was often seen reading magazines at his desk or sitting with his eyes closed; that plaintiff was seen leaving work early; and that plaintiff displayed a general lack of motivation toward learning new tasks or pleasing his customers. Document 14, Exh. C at ¶ 8. Plaintiff denies sitting at his desk with his eyes closed and testified at his deposition that Ruethain lied about this. Brown depo. at 54. Plaintiff explains that the magazines he was reading at his desk were technical magazines from his previous job which were forwarded to him through company mail. Document 21 at 11. Plaintiff admits that he left work early on a few occasions, but explains that he did so only when others quit early or when there was nothing left for him to do. Plaintiff further asserts that he was on flex time, so he could come into work early and leave early on occasion. Id.
Plaintiff's assertion that Ruethain lied about receiving reports that plaintiff sat at his desk with his eyes closed does not raise a question of fact on the issue of pretext. See Rand, 42 F.3d at 1146 (plaintiff cannot defeat summary judgment motion simply by asserting that management officials lied to conceal discrimination). Plaintiff's explanations for reading magazines at his desk and leaving early likewise do not create an issue of fact as to pretext. Instead, they simply invite the Court to look over Ruethain's shoulder and re-evaluate his decisions. "The Court is not permitted to second-guess the plaintiff's supervisors or correct a bad business decision if the decision was based on non-discriminatory reasons." Hill v. St. Louis Univ., 923 F.Supp. 1199, 1213 (E.D.Mo.1996). Plaintiff has failed to submit any evidence to show that younger employees who engaged in similar behavior did not receive negative evaluations, regardless of their explanations for the behavior. See Ferry, 883 F.Supp. at 439.
*673 Plaintiff next asserts that during the mid-1992 evaluation, Ruethain stated that he should never have hired plaintiff but instead should have hired a "young college graduate" and paid him half the salary plaintiff was getting. Document 21 at 11. Plaintiff maintains that this statement reveals a preference for younger workers and is probative of age discrimination. Id. Ruethain denies making the statement. Document 14, Exh. C at ¶ 14. But, as defendant correctly recognizes, for purposes of resolving this motion for summary judgment, the Court must assume that Ruethain made the statement. Defendant argues, however, that the statement is not evidence of discriminatory intent. Instead, defendant maintains that the statement expresses Ruethain's view that plaintiff was not producing at a level commensurate with his years of experience and salary level. Id.
After carefully considering Ruethain's comment in light of the entire record, the Court concludes that the comment expressed Ruethain's disappointment with plaintiff's performance in light of his salary and not a preference for younger workers. Standing alone, Ruethain's statement is ambiguous and viewed in isolation could lead one to conclude that Ruethain would have preferred to hire a younger person. Plaintiff's deposition testimony, however, places the statement in its proper context. See Bialas, 59 F.3d at 763-64 (8th Cir.1995) (viewing CEO's statement that "people over 45 years of age, including myself, generally have serious difficulty adjusting to change", in context of entire memorandum and concluding statement related to concern over change in management philosophy rather than discriminatory animus).
Plaintiff testified that when he initially interviewed for the job in Business Operations, Ruethain expressed concern over plaintiff's salary because it was higher than other employees in the division. Brown depo. at 35. Plaintiff explained that there was nothing he could do because he had earned his salary over a long period. Plaintiff testified that Ruethain said he would "work with it." Id. Plaintiff then testified that during the July 29, 1992 evaluation, after expressing dissatisfaction with plaintiff's performance, Ruethain stated: "I could have hired a young college graduate and paid them half of what I'm paying you to do this kind of work." Id. Significantly, according to his own testimony, plaintiff construed the comment as displeasure with plaintiff's salary level. Plaintiff testified that he responded to Ruethain by stating: "Well my salary has nothing to do with this type of work. I earned that salary over 30 years at [a] different kind of work at a different company." Id. at 54. Plaintiff also testified that during the evaluation Ruethain "just said that I should be working at a higher level because of my salary, you know, if somebody is being paid that much, they should be doing a lot more work than everybody else." Id. at 87.
An employer's evaluation of an employee's job performance in light of that employee's salary is a legitimate business judgment which this Court may not second-guess. Moreover, terminating higher paid employees "does not, in itself, support an inference of age discrimination." Bialas, 59 F.3d at 763; see Serben v. InterCity Mfg. Co., 36 F.3d 765, 766 (8th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1402, 131 L.Ed.2d 290 (1995). Thus, viewing Ruethain's statement as concern over plaintiff's performance in light of his salary, the Court concludes that the statement does not support an inference of age discrimination and does not create a genuine issue of fact as to whether the explanation offered for plaintiff's termination is pretextual. See. e.g., Thomure v. Phillips Furniture Co., 30 F.3d 1020, 1025 (8th Cir.1994) (employer's comment that everything would be all right if company could get rid of plaintiff and co-worker, both of whom were over 50 and paid more than their co-workers, did not support inference that age was motivating factor in termination), cert. denied, ___ U.S. ___, 115 S.Ct. 1255, 131 L.Ed.2d 135 (1995).
Plaintiff cites Elliott v. Montgomery Ward & Co., 967 F.2d 1258, 1263 (8th Cir.1992), as support for his argument that Ruethain's comment evidenced age discrimination and creates a fact question on the issue of pretext. In Elliott, however, the statement evidencing discriminatory animus was made by the plaintiff's district manager at the time he *674 told plaintiff that her job was being eliminated and her duties were being distributed to two younger employees. Id. at 1260. Here, in contrast, Ruethain's statement preceded plaintiff's termination by three months and was made during plaintiff's evaluation when Ruethain expressed dissatisfaction with plaintiff's job performance. Thus, even assuming Ruethain's comment provides some circumstantial evidence of a discriminatory attitude, it still does not create a question of fact on the issue of pretext. See Nitschke, 68 F.3d at 252 (plaintiff must show causal connection between evidence of employer's discriminatory attitude and termination to show pretext).
Plaintiff also cites Clements v. General Accident Ins. Co., 821 F.2d 489 (8th Cir.1987), as support for his argument. In Clements, however, the plaintiff produced evidence that his supervisor had (1) stated that he would prefer to hire younger men to fill certain positions, (2) stated that older people performed less competently than younger people on certain tests, and (3) refused to consider an applicant over 50, commenting that "he's too much of a heavy for us." Id. at 492. The Eighth Circuit concluded that these statements were probative of the supervisor's general discriminatory intent. Ruethain's single equivocal reference to age during the course of plaintiff's evaluation does not carry the same probative value.
Furthermore, plaintiff was in the protected age group both at the time he was hired and terminated, and the same person, Ruethain, hired plaintiff and selected him for termination. This "gives rise to an inference that age discrimination was not the motive behind [his] termination." Brown v. CSC Logic, 82 F.3d 651, 658 (5th Cir.1996). In Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 174 (8th Cir.1992), the Court addressed a similar situation and stated: "The most important fact here is that the plaintiff was a member of the protected age group both at the time of his hiring and at the time of his firing, and that the same people who hired him also fired him." The Court found it "incredible" that "company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later." Id. at 175.[6]
Plaintiff next argues that defendant's discriminatory intent may be inferred from evidence that two younger employees, Farthing and Johnson, were assigned some of the functions of plaintiff's position following plaintiff's termination. Document 21 at 12. Defendant concedes that Farthing and Johnson assumed some of plaintiff's duties following the RIF, but points out that they were already employed in the division and took over the duties that remained in addition to their existing workload. Document 26, Exh. D at ¶¶ 5-6.
The Court rejects plaintiff's argument. "During a reduction in an employer's workforce ... the fact that the plaintiff's duties were assumed by a younger person is not in itself enough to establish a prima facie case." Bialas, 59 F.3d at 759. Additionally, no inference of discriminatory animus may be drawn from the from the fact that defendant consolidated some of plaintiff's duties with the duties of younger employees due to the economic considerations necessitating the RIF. See Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1270 (8th Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987); Holley, 771 F.2d at 1167.
Finally, as evidence that defendant's explanation for his termination is pretextual, plaintiff cites statistics showing that all seven employees who were terminated or retired in lieu of termination during the RIF were over 53 years old, the average age of the seven employees was 55.857, and the average age of all 144 comparable employees before the RIF was 39.708. Document 21 at 14; id. at Exh. 1, ¶¶ 4-6. Based on Nitschke, the Court concludes that this evidence is insufficient to create an issue of fact on the question of pretext.
In Nitschke, the plaintiff introduced evidence showing that the termination rate for employees of McDonnell Douglas's Procurement *675 Services Department who were older than 54 was 344% higher than for the entire Department; that all five of the employees terminated in that RIF were over 40; and that the average age of the remaining 32 employees was 41.84, as compared to 53.2 for the employees who were laid off. After reviewing this evidence the Court stated:
Nitschke's statistical evidence is insufficient to discredit McDonnell Douglas's explanation for his termination. In Hutson, we held that in order for a statistical comparison of employees to prove pretext, it must analyze the treatment of comparable employees. Since McDonnell Douglas used performance evaluations to determine which workers to lay off, in order to prevail, Nitschke would have to show that McDonnell Douglas treated comparably rated employees differently. His statistical analysis ignores the performance evaluations and, therefore, does not prove that McDonnell Douglas's explanation was pretextual.
Nitschke, 68 F.3d at 252 (internal quotations and citations omitted). Plaintiff's statistics here suffer from the same deficiency.
The Court notes that defendant has submitted evidence indicating that the average age of the comparable employees before the RIF was 39.6, and the average age after the RIF was 38.6. Document 26, Exh. B at ¶¶ 4-5. Defendant based this calculation on a layoff of 10 employees, instead of seven. Id. at ¶ 5. Using only the seven employees plaintiff identified as laid off in the RIF to perform the calculation, the average age of the 137 employees after the RIF was 38.83. Before the RIF, of the 144 comparable employees, 63 were within the protected age group. Using plaintiff's numbers, defendant retained 56 employees within the protected age group after the RIF, including several older than plaintiff. Accordingly, the statistical evidence regarding the composition of the comparable group of employees before and after the RIF lends little support for plaintiff's position.
Plaintiff also cites statistics indicating that older employees generally received lower relative assessment scores than younger employees. For example, the average relative assessment score for all 144 comparable employees was 65.368. Document 21, Exh. 1 at ¶ 9. The average relative assessment score for the group of 63 comparable employees over 40 years old, however, was 56.381. Id. at ¶ 15. And, the average relative assessment score for the group of 81 comparable employees under age 40 was 72.358. Id. at ¶ 17. Plaintiff maintains that these statistics demonstrate that the relative assessment process itself was discriminatory in that older employees disproportionately received lower scores than younger employees and that the statistics support a finding of pretext. Document 21 at 16.
Plaintiff, however, has produced no evidence to suggest that age was a factor in the relative assessment process. See Furr v. Seagate Technology, Inc., 82 F.3d 980, 988 (10th Cir.1996) (evidence that older managers generally received lower rankings insufficient to show pretext where plaintiff produced no evidence to show age was factor in rankings). In contrast, Ruethain stated that age was not a consideration in the relative assessment process. Document 14, Exh. C at ¶ 14. Likewise, Gumper indicated that age was not a factor that was considered in selecting employees for the layoff. Id., Exh. D at ¶ 14. Indeed, of the criteria to be considered in effectuating the RIF, only two are even arguably related to age: length of service and experience. Id. at Exh. 1. Plaintiff makes no showing, however, as to how these factors were considered or whether they were used to give lower assessments to older employees. His evidence simply reflects a statistical correlation between age and low assessment scores. "A statistical coincidence does not rise to the level of pretext." Furr, 82 F.3d at 988.
Moreover, "[e]ven if the court were to assume that [plaintiff's] statistics demonstrate the existence of system-wide bias against older individuals at McDonnell Douglas in the execution of the RIF, ... that is not enough to discredit the specific explanation offered in [plaintiff's] case." Hutson 63 F.3d at 778. After considering the entire record in the light most favorable to plaintiff, the Court concludes that plaintiff has failed to create a genuine issue of material fact on *676 whether the explanation offered for his termination  the RIF coupled with his low score on the relative assessment ranking  was a pretext for age discrimination. In reaching this conclusion, the Court notes that this case is virtually indistinguishable from Nitschke and Hutson in which the Eighth Circuit affirmed summary judgments for McDonnell Douglas in age discrimination cases following RIFs.

III. CONCLUSION
Accordingly, in view of the foregoing, defendant's motion for summary judgment is GRANTED. The Court will issue a separate order and judgment to accompany this memorandum. All pending motions are DENIED as moot.
NOTES
[1] In his affidavit, Ruethain stated that when he interviewed plaintiff in March 1992, based on plaintiff's experience, Ruethain believed plaintiff had the necessary analytical and computer skills to enable him to learn the tasks of the new position quickly. Document 14, Exh. C at ¶ 5.
[2] The evaluation form explains that a rating of "RI" means performance requires improvement and that the employee's performance sometimes meets expectations. A rating of "CA" means immediate corrective action is required and that the employee's performance does not meet minimum expectations. Document 14, Exh. A-1.
[3] Plaintiff rated himself as fully competent in nine areas and as exceeding expectations in three areas. Document 14, Exh. A-1.
[4] Ruethain denies telling plaintiff that a younger person could have been hired for his position. Document 14, Exh. C at ¶ 14.
[5] To establish a prima facie case of age discrimination in a RIF case, a plaintiff must show that (1) he was at least 40 years old at the time of his termination; (2) he satisfied the relevant job qualifications; and (3) he was discharged. Due to the nature of a RIF, a plaintiff must also make an additional showing that age was a factor in the termination. Nitschke, 68 F.3d at 251. For purposes of the prima facie case, the additional showing can be made through statistical evidence, such as where a pattern of forced early retirement or failure to promote older employees is demonstrated, or through circumstantial evidence, such as statements or practices indicating a preference for younger employees. See Holley v. Sanyo Mfg., Inc. 771 F.2d 1161, 1166 (8th Cir.1985).
[6] The Court also notes that Ruethain was 40 years old and within the protected age group himself at the time he selected plaintiff for the layoff. This enhances the inference that age discrimination was not the motive behind plaintiff's termination. Brown, 82 F.3d at 658.