**Robert C. DINGMAN, Plaintiff,**

v.

**DELTA HEALTH GROUP, INC.
d/b/a Crest Manor Nursing
Home, Defendant.**

**No. 97–9013–CIV.**

United States District Court,
S.D. Florida.

Oct. 30, 1998.

Susan M. Seigle, Chauncey & Seigle, P.A., Palm Beach, FL, for Plaintiff.

James C. Polkinghorn, Kristen L. Dildine, Fisher & Phillips L.L.P., Ft. Lauderdale, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MORENO, District Judge.

Plaintiff Robert Dingman has sued Defendant Delta Health Group, Inc. d/b/a Crest Manor Nursing Home, asserting a cause of action for violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Since the Court finds that Dingman cannot maintain a claim for age discrimination based on either direct or circumstantial evidence, the Court grants Crest Manor's motion for summary judgment.

### I. BACKGROUND

In November 1995, Plaintiff Robert C. Dingman, then 63 years old, was hired by Andrew Neuman, the Administrator of Crest Manor Nursing Home, to be the Environmental Services Supervisor ("ESS") for the nursing home. At the time, Dingman had no prior experience as an ESS in a nursing home. Plaintiff claims that in May, 1996, Neuman indicated that he wanted to replace Plaintiff with a younger person. On or about July 17, 1996, Dingman, still 63 years old, was terminated by Mr. Neuman. Dingman filed suit, asserting a violation of the ADEA.

Defendant has filed a motion for summary judgment, arguing that Dingman's attitude changed for the worse following his 90 day probationary period, and that the conditions at the facility, which Dingman was responsible for, declined and eventually became noticeable. Defendant argues that Dingman cannot maintain a claim for age discrimination based on either direct or circumstantial evidence. The Court agrees.

### II. LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. LEGAL ANALYSIS

To recover under the ADEA, Dingman must first establish a *prima facie* case of age discrimination through direct evidence of discriminatory intent, through circumstantial evidence creating an inference of discrimination, or through statistics demonstrating a pattern of discrimination. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). The parties agree that the

statistical pattern method is not at issue in this case.

Crest Manor asserts several main arguments in support of its motion for summary judgment: (1) that Dingman has not presented direct evidence of discrimination; (2) that even if Dingman has presented such direct evidence, Crest Manor has established by a preponderance of the evidence that it would have terminated Dingman absent any discriminatory intent; (3) that Dingman cannot establish a *prima facie* case of age discrimination through circumstantial evidence because Dingman fails to establish the second prong of the circumstantial evidence test; (4) that Dingman cannot establish that Crest Manor's proffered legitimate, nondiscriminatory reason for Dingman's discharge was pretextual. Plaintiff counters that he has established a claim of age discrimination based on both direct and circumstantial evidence sufficient to survive Defendant's motion for summary judgment.

## A. Direct Evidence of Discrimination

■ Direct evidence of discrimination would, if believed, "prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989). In addition, "courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." *Id.* at 582. For example, a management memorandum stating that an employee should be fired because he is too old would constitute direct evidence. *See Earley*, 907 F.2d at 1081. If Plaintiff establishes direct evidence of discrimination, Defendant then must prove that the same employment decision would have been reached absent any discriminatory intent. *Carter*, 870 F.2d at 582; *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 774 (11th Cir.1982).

Dingman testified that, on May 15, 1996, Mr. Neuman told him that he "wanted to hire a younger person, one that he could trust to move with him to the new building." (Dingman dep. at 70). This statement is the focus of Dingman's direct evidence claim.

Plaintiff argues that this statement constitutes direct evidence of discrimination because it establishes discriminatory intent

without inference or presumption. *See Earley*, 907 F.2d at 1081. Defendant, on the other hand, argues that Neuman's comment merely "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence" and thus constitutes circumstantial evidence. *Id.* at 1081–82. Defendant further asserts that the comment was a "stray remark" that can only support a claim of discrimination when related to, and made contemporaneous with, the adverse employment action.

■ Although it appears that Neuman's statement may have been an expression of disappointment in not having a worker to move to the new building with him, a point addressed further in the Court's analysis of the pretext prong of Dingman's circumstantial evidence claim, *see* Section III.B.3, *infra*, the Court need not decide whether Neuman's statement constitutes direct evidence of discrimination or a mere "stray remark." Even assuming, for summary judgment purposes, that Neuman's statement constitutes direct evidence, Crest Manor has rebutted this evidence by a preponderance of the evidence indicating that Dingman would have been terminated absent any discriminatory intent. *Lee*, 684 F.2d at 774.

The evidence indicates that following Dingman's 90 day probationary period, as maintenance was not performed or completed, the facility deteriorated such that the conditions became noticeable to the staff, to the residents' family members, and to Mr. Neuman. (Neuman dep. at 37, 57–58). During the last few months of Dingman's employment, some residents' restrooms smelled of urine; dirt and debris were found on the floors and furniture; and there were holes and cracks in walls, doors, closets, and ceilings. (Neuman aff. ¶ 2). In addition, water damage was evident on the ceilings and walls, some lights in the residents' rooms had no covers, and mold grew on certain residents' air conditioners. *Id.* Furthermore, maintenance and housekeeping were not being performed on schedule, and Sonia Diaz, the Director of Nursing at Crest Manor, received complaints about housekeeping's failure to keep areas free of dirt and debris. (Diaz aff. ¶ 3).

Dingman also received a written reprimand for insubordination and inappropriate conduct in March 1996, following an incident in which he called Neuman a "damn liar" and "brain dead." This reprimand also noted two other occasions, in January and February 1996, in which Dingman conducted himself inappropriately while speaking to Neuman in front of other staff members. Diaz testified to similar inappropriate conduct by Dingman.

Furthermore, in a customer satisfaction survey performed in May 1996, the facility's scores for cleanliness, upkeep and safety, and the absence of odors, clearly dropped under Dingman's supervision. Neuman thus testified that "because of the deteriorating conditions in the facility and the conduct problems, which I did not feel could be resolved, I felt I had to, for the facility, go ahead with initiating the process to make a change" and terminate Dingman's employment. (Neuman dep. at 40).

While Crest Manor also argues that Dingman failed to perform a required monthly fire drill in March 1996 (Neuman aff. ¶ 3), this issue remains in dispute. Dingman's affidavit indicates that he never failed to perform the required monthly fire drill. (Dingman aff. ¶ 3).

Dingman counters Crest Manor's claims by pointing to his February 5, 1996 evaluation completed by Neuman, in which Dingman was rated "Above Average" in the categories of Quality of Work, Quantity of Work, Cooperation, Initiative, Self Improvement and Personality, and "Outstanding" in Dependability. Plaintiff also points to the annual state licensure inspection conducted January 2–3, 1996, which indicated no deficiencies in environmental services.

However, the state inspection was conducted only two months after Dingman was hired and one month prior to the evaluation conducted at the end of the 90 day probationary period. Furthermore, Dingman's initial satisfactory job performance and the positive evaluation he received in February 1996 cannot overcome the numerous deficiencies that plagued Dingman's later tenure at Crest Manor. The Court finds that, based on the evidence reviewed above, Crest Manor has established by a preponderance of the evidence that it would have terminated Dingman based on his unsatisfactory performance and conduct problems even absent any consideration of his age. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Lee,* 684 F.2d at 774. Crest Manor's motion for summary judgment is therefore granted as to Plaintiff's direct evidence claim.

## B. Circumstantial Evidence of Discrimination

### 1. The *Prima Facie* Case

To establish a *prima facie* case of age discrimination based on circumstantial evidence, Dingman must show that: (1) he is a member of the protected age group; (2) his job performance met his employer's legitimate expectations; (3) he was discharged; and (4) he was replaced by a substantially younger person. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 310–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Once Plaintiff establishes a *prima facie* case, the burden of production shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).

After Defendant satisfies this burden, Plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for his termination. *Id.* Dingman may accomplish this task either directly by persuading the Court that the discriminatory reason more likely motivated Crest Manor, or indirectly by establishing that Crest Manor's proffered legitimate, nondiscriminatory reason is unworthy of credence. *Id.*

Crest Manor does not dispute that Plaintiff has met three of the four elements required to establish a *prima facie* case through circumstantial evidence: Plaintiff was a member of the protected age group; Plaintiff was discharged; and Plaintiff was replaced by a substantially younger person. The only real dispute regarding the *prima facie* elements is whether Plaintiff's job performance met Crest Manor's legitimate expectations.

As previously discussed, Defendant admits that Plaintiff's performance appeared satisfactory during his 90 day probationary period, and that on February 5, 1996, Dingman received a very positive evaluation from Neuman. Also, during the annual state licensure inspection conducted in January 1996, no deficiencies were indicated in environmental services. However, this inspection was conducted only two months after Dingman was hired, and Dingman's subsequent February evaluation occurred more than five months before his termination.

Furthermore, Dingman's problems began following the probationary period. First, his attitude took a negative turn. As discussed above in the Court's analysis of Dingman's direct evidence claim, Dingman received a written reprimand from Mr. Neuman in March 1996, based on Dingman's insubordination and inappropriate conduct. The reprimand states that Dingman called Neuman a "damn liar" and "brain dead," and the reprimand notes two occasions in January and February 1996, in which Dingman acted inappropriately when speaking to Neuman in front of other employees. Sonia Diaz also indicated that Dingman was insubordinate and engaged in other inappropriate conduct.

In addition, conditions at the facility—Mr. Dingman's responsibility—declined and eventually became noticeable, culminating in a decline in the facility's scores in the May 1996 customer satisfaction survey.

However, although the issue is far from clear, the Court will assume for summary judgment purposes that Dingman has established a *prima facie* case based on circumstantial evidence.

### 2. Crest Manor's Legitimate, Nondiscriminatory Reason for Terminating Dingman

■ Based on the evidence reviewed above, Crest Manor has established a legitimate, nondiscriminatory reason for Dingman's termination: his insubordination and his unsatisfactory performance as ESS.

Dingman asserts that Neuman began to find fault with Dingman only after the alleged discriminatory statement in May 1996, in an effort to back-track form the statement and establish a nondiscriminatory reason to

rid of Dingman. However, Neuman had sufficient cause to terminate Dingman even before the May 1996 comment, and the results of the customer survey released after that time only strengthen the case for termination.

### 3. Whether Crest Manor's Proffered Reason is a Pretext

■ Dingman must present concrete evidence in the form of specific facts to demonstrate that Crest Manor's proffered reason is not the true reason for his termination, but rather is a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

While Dingman apparently performed well during the state inspection and he received a positive evaluation in early February 1996, these prior positive reviews are not necessarily probative on the issue of pretext or on the validity of Neuman's subsequent problems with Dingman, including at the time of termination. *See Brown v. McDonnell Douglas Corp.,* 936 F.Supp. 665, 671 (E.D.Mo.1996), *aff'd,* 113 F.3d 139 (8th Cir.1997). The March 1996 reprimand, which included reference to incidents in January and February 1996, the noticeable deterioration of the facility, and the customer satisfaction survey followed the positive review and were clearly instrumental in Dingman's termination. The affidavit of Sonia Diaz, the Director of Nursing at Crest Manor during Dingman's tenure, indicates that Dingman had disagreements with Neuman or other department heads at department head meetings, that Dingman used foul language and walked out of the meetings, and that Dingman complained inappropriately to her about Mr. Neuman. (Diaz aff. ¶ 2). Diaz further indicated that Dingman criticized Neuman in front of other staff members, *id.,* and that Dingman failed to properly supervise the housekeeping staff to ensure that they followed a proper cleaning schedule. *Id.* ¶ 3.

Plaintiff questions the credibility of both Neuman and Diaz because each wrote a letter of recommendation on Dingman's behalf following his termination. However, Neuman testified that he wanted "to leave the

situation with Mr. Dingman as friendly as possible because we were friends originally and I wanted to remain friends with him despite the difficulties we had in an employer/employee relationship." (Neuman dep. at 46). In addition, Diaz completed a reference request directed to Boca Nursing Services, Dingman's subsequent employer. However, the reference letter merely indicated that Dingman's performance was "average," and that he was eligible for re-hire. This recommendation letter hardly constitutes a ringing endorsement of Dingman, nor does it necessarily conflict with the criticisms raised by Diaz in her affidavit. The Court concludes that these letters do not demonstrate that the proffered reason for Dingman's termination was a mere pretext for age discrimination. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

In addition, Neuman's statement, rather than evincing age discrimination, apparently expresses Neuman's disappointment over not having someone that he could trust to move with him to the new building. *See Brown,* 936 F.Supp. at 673. In *Brown,* the plaintiff's supervisor stated that he never should have hired plaintiff but rather should have hired a "young college graduate" at half the plaintiff's salary. The court concluded that, in light of the entire record, the statement "expressed [the supervisor's] disappointment with plaintiff's performance in light of his salary and not a preference for younger workers." *Id.*

Here, as in *Brown,* the alleged discriminatory statement does not necessarily express a preference for younger workers, but more likely indicates Neuman's disappointment in not having a worker who would move with him to the new building. Interestingly, Plaintiff himself testified that what bothered him most about the statement was the trust issue, rather than any age discrimination. *See id.* Dingman testified regarding his reaction to Neuman's comment:

> I was really hurt because I thought we were friends enough and he knew if he left a million dollars on his desk and the door open, it would still all be there when he

came back if I went in the office and came out.

> The part that hurt the most was the trust. It really bothered me that he had said, "somebody that he could trust." That bothered me a lot.

(Dingman dep. at 70).[1]

Dingman has also argued that, following the May 15, 1996 comment, Neuman's "tone of voice" began to change when he would point out work-related deficiencies, and Dingman perceived Neuman's requests to resolve problems as "nitpicking." (Dingman dep. at 67–69, 122). Dingman maintains that Neuman needed to fabricate a reason to terminate Dingman to hide the actual discriminatory reason. The Court disagrees. Neuman had numerous valid reasons to terminate Dingman both before and after the May 1996 comment. In addition, Dingman's mere conclusory allegations and assertions that Crest Manor's proffered explanation is a mere pretext do not suffice to defeat Crest Manor's motion for summary judgment. *Earley,* 907 F.2d at 1081.

### a. The Same Actor Inference

Several courts have found that where, as here, "the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991); *see also Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996); *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992). Although the United States Court of Appeals for the Eleventh Circuit has not addressed this "same actor" inference, this Court finds the reasoning behind this theory quite persuasive.

As the United States Court of Appeals for the Fourth Circuit noted in *Proud v. Stone:*

> "[C]laims that employer animus exists in termination but not in hiring seem irrational." From the standpoint of the puta-

---

1. Plaintiff did later testify that the comment was "the first time ... somebody had said to me anything about my age. That started to bother me. Someday it will happen to all of us that

they'll say, well, you're too old for the position, but it was the first time I had been told that and that sunk in after a while." (Dingman dep. at 71).

tive discriminator, "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."

*Proud,* 945 F.2d at 797 (quoting Donohue & Siegelman, The Changing Nature of Employment Discrimination Litigation, 43 Stan. L.Rev. 983, 1017 (1991)).

The *Lowe* court further explained: "The most important fact here is that the plaintiff was a member of the protected age group both at the time of his hiring and at the time of his firing, and that the same people who hired him also fired him." *Lowe,* 963 F.2d at 174.

■ The Court thus finds that since Dingman, who was 63 years old at all relevant times, was both hired and fired by Neuman within an eight month time span, a strong inference exists that Crest Manor's stated reasons for terminating Dingman are not pretextual. The Court agrees with Defendant's assertion that it is highly unlikely that Neuman, eight months after hiring the 63 year old Dingman, "suddenly developed an aversion to older people." *Id.* at 175.

Plaintiff has thus failed to either directly persuade the Court that a discriminatory reason more likely motivated Crest Manor, or to show that Crest Manor's proffered reason is unworthy of credence. *Combs,* 106 F.3d at 1528. Crest Manor's motion for summary judgment must therefore be granted as to Dingman's circumstantial evidence claim.

## IV. *CONCLUSION*

Even if Mr. Neuman's statement is considered to be direct evidence of discrimination, Crest Manor has established that it would have terminated Dingman absent any discriminatory intent. Furthermore, Dingman has failed to establish that Crest Manor's proffered legitimate, nondiscriminatory reason for terminating him was a mere pretext for discrimination. Therefore, it is

ADJUDGED that Defendant Crest Manor's Motion for Summary Judgment, filed on *July 1, 1998,* is GRANTED.